## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

03 FEB 28 PM 3: 57

DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| STEPHEN M. CHAZEN, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CV-02-BE-0352-S |
| | } | |
| DELOITTE & TOUCHE, LLP, | } | |
| | } | |
| Defendant. | } | |
| | } | |
| | } | |

ENTERED *pc*

FEB 2 8 2003

### MEMORANDUM OPINION

This matter is before the court on defendant Deloitte & Touche LLP's[1] "Motion to

Dismiss" (Doc.6).  The defendant asserts that this action should be dismissed on four alternative

grounds: (1) the doctrine of collateral estoppel precludes relitigation of the *forum non conveniens*

issue decided against plaintiff in state court; (2) the merits of the *forum non conveniens* issue

support dismissal; (3) the statute of limitations bars plaintiff's action; and (4) plaintiff has not

adequately pled his claims.  The court has reviewed submissions of counsel and heard oral

argument on these issue.  Because the court finds that plaintiff's claim should be dismissed under

the first three alternative grounds, the court need not address the adequacy of plaintiff's

pleadings.

_____

[1]Plaintiff improperly designated the defendant as "Deloitte & Touche Chartered Accountants."
At the hearing on this motion, the court granted plaintiff's oral motion to properly name the
defendant as "Deloitte & Touche LLP."  Deloitte & Touche LLP is sometimes referred to as
"Deloitte Canada."

1

21

I.      Facts and Procedural History

This lawsuit represents the second effort by plaintiff to sue Deloitte Canada in Alabama. As stated in his complaint, plaintiff filed suit in December, 1999, in the Circuit Court of Jefferson County, Alabama, based on the identical set of facts that underlie this action.  The Circuit Court dismissed that action based on *forum non conveniens* because it found that Ontario, Canada was a more convenient forum.  The Alabama Supreme Court affirmed that dismissal without opinion in January, 2002.  The plaintiff then filed this lawsuit in federal court on February 8, 2002.  The only significant distinction between this action and the previous state court suit is the addition of a federal securities count that was conspicuously absent from the first suit.

This action and the earlier state court action arose out of the October 1997 purchase by Philip Services Corporation, a Canadian corporation, of Southern Foundry Supply, Inc., a closely held Tennessee corporation.  Mr. Chazen, along with four other shareholders, sold his Southern Foundry stock in partial consideration for shares of Philip common stock.  In both actions, Mr. Chazen alleges that the value of the Philip stock he received was artificially inflated because of misstatements contained in various documents, including the 1995 and 1996 financial statements. Deloitte Canada, a limited liability partnership organized under Canadian law, audited those statements.

In January 1998, Philip announced a loss for 1997, and subsequently restated its earnings for 1995 and 1996.  The market price of Philip stock dropped and numerous law suits were filed in the United States and Canada.  Most of the suits in the United States were unified in multidistrict class action litigation and transferred to the Southern District of New York as *In re*

2

*Philip Services Corp. Securities Litigation. See DiRienzo v. Philip Serv. Corp.*, 232 F.3d 49,

opin. on rehearing, 294 F.3d 21 (2d Cir. 2002), cert. den. 123 S. Ct. 556 (2002).

In addition, the other four selling shareholders in Southern Foundry filed suit against

Deloitte Canada and others in Tennessee state court in an action entitled *Gary D. Chazen, et al.*

*v. Philip Metals, Inc., et al.,* (the "Chazen Tennessee Action"). The defendants removed the

Chazen Tennessee action to federal court, and the court transferred it to the Southern District of

New York. Instead of joining in the Chazen Tennessee action, the plaintiff filed a complaint in

the Circuit Court of Jefferson County, Alabama, on December 30, 1999. After an unsuccessful

removal attempt, Deloitte filed a motion to dismiss the state court action on the basis of *forum*

*non conveniens*. The state court dismissed the action, specifically finding:

1. a more appropriate forum exists in Ontario;
2. the acts giving rise to the action occurred in Canada;
3. the convenience of the parties and the witnesses would be served by trying the case in Ontario rather than in Alabama; and
4. The interests of justice would be served by trying the case in Ontario.

*Chazen v. Deloitte & Touche LLP*, No. 99-7522 (Jeff. Cty. Ala. Cir. Ct. Nov. 7, 2000), Order at

10. The state court based its decision on a multitude of factors, including the plaintiff's choice of

forum, the plaintiff's residence, where the relevant acts took place, the location of other pending

actions, and the location of the relevant documents and witnesses. Order at 3-10. The Alabama

Supreme Court affirmed the dismissal of the state court action in January 2002.

In addition to the actions described above, the events underlying Philip's demise have

given rise to litigation in Ontario. Deloitte Canada was named in four such actions: (1) a

proposed class action lawsuit brought on behalf of all persons in Canada who held and/or

purchased Philip common stock between February 28, 1996 and April 23, 1998; (2) a suit by two

3

former officers of Philip; (3) a suit by Philip's receiver; and (4) a proposed class action on behalf

of Philip's bank lenders.  The heart of the allegations against Deloitte Canada in these actions is

the same as that in Chazen's Complaint.  The proposed shareholder class action in Ontario was

dismissed and is now on appeal; the other three actions remain pending in the Ontario trial court.

II.     Collateral Estoppel

The defendant argues that collateral estoppel precludes the relitigation of the *forum non*

*conveniens* issue as it has already been decided by the Alabama circuit court and Alabama

Supreme Court.  See Memorandum of Defendant in Support of Its Motion to Dismiss (Doc. 7) at

8 - 13.  The plaintiff counters that *Parsons v. Chesapeake & O. R. Co.*, 375 U.S. (1963) holds

that a federal district court "can never" give issue preclusion effect to a state court decision on

*forum non conveniens* grounds.  Because plaintiff's argument based on *Parsons* would be

decisive of this issue if plaintiff were correct, the court first addresses the effect of the *Parsons*

decision on this case.

Plaintiff asserts that *Parsons* is "on all fours with this case."  Plaintiff's Memorandum in

Opposition to Defendant's Motion to Dismiss (Doc. 11) at p. 8.  The plaintiff then asserts that

"[u]nder the clear teachings of *Parsons*, however, this Court **can never** be bound by a state court

decision on *forum non conveniens*."  Plaintiff's Mem. at 9 (emphasis in original).

The court begs to differ with plaintiff's analysis of *Parsons*.  Only the clever and creative

editing by plaintiff of selected quotes from *Parsons* supports the overstatement of its holding.

In *Parsons*, the plaintiff had filed a suit in state court that was dismissed on the basis of

*forum non conveniens*.  He then filed the same cause of action in federal court.  The district court

refused to transfer the case.  The defendant sought and received mandamus from the appellate

4

court. The Seventh Circuit issued a writ directing the district court to transfer the case. In so doing, the appeals court found that the "district court had no discretion but to recognize the authoritative value of the state court's ruling." 375 U.S. at 72, (quoting 357 F.2d at 926.)

In reversing the decision, the Supreme Court recognized several material factual differences in the considerations by the state and federal courts in applying similar objective criteria to the *forum non conveniens* issue. As one example, the Court noted that the state court could consider the availability of a more convenient state forum. But no federal court existed in that forum; the closest federal court sat in a city sixty miles away. The Court noted: "the question whether the convenience of the parties and of the witnesses would be better served by a trial in a state court in Ludington is not the same question as whether those interests would be better served by a trial in a federal court in Grand Rapids." 375 U.S. at 73.

In selectively quoting from *Parsons*, the plaintiff omitted critical language establishing the rational for the Court's decision. See Plaintiff's Mem. at 9. Two quotes from *Parsons* in their entirety demonstrate that the ruling does not carry the broad prohibition argued by plaintiff: "However, since the material facts underlying the application of these criteria in each forum were different in several respects, principles of res judicata are not applicable to the situation here presented." 375 U.S. at 73 (emphasis added). "Since different factual considerations may be involved in each court's determination, we hold that a prior state court dismissal on the ground of *forum non conveniens* can never serve to divest a federal district judge of the discretionary power vested in him by Congress to rule upon a motion to transfer under § 1401(a)." 375 U.S. at 73 -74 (emphasis added).

After a thorough review of *Parsons*, the court concludes that *Parsons* does not preclude

5

consideration of the collateral estoppel effect of the state court decisions on the *forum non conveniens* issue in this case <u>if</u> the same objective criteria and the same material facts apply in both cases. *See Pastewka v. Texaco, Inc.*, 565 F.2d 851, 854 (3d Cir. 1977) ("[I]n this case appellants point to identical objective criteria and rely on identical material facts underlying the application of those criteria. Their contention amounts to no more than a wish that, in applying objective criteria to the undisputed facts, a different judge would make the discretionary *forum non conveniens* determination.")

Before considering whether the state court considered the same objective criteria and material facts this court would consider, the court should first determine whether the requirements for collateral estoppel are met. To establish collateral estoppel, the movant must demonstrate four factors:

> (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue was a "critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (citation omitted). Chazen had a full and fair opportunity to litigate, and actually litigated, the issue of *forum non conveniens* in the state courts in Alabama. The Alabama state court decided precisely that issue as a necessary and critical part of its order, and dismissed Chazen's case pursuant to the doctrine of *forum non conveniens*.

The only real question this court must examine, particularly in light of *Parsons*, remains whether the <u>identical</u> issue was litigated in the state court decision. To answer that question, the court must consider whether the state court decision involved the same objective criteria and

6

material facts in applying those criteria as before this court. *See Pastewka*, 565 F.2d at 854.

A review of the state court's order reveals that it considered the same objective criteria and material facts that this court would consider in addressing the *forum non conveniens* issue. The virtually identical nature of the complaints filed in state and federal court demonstrate that the material facts are the same in both proceedings. The analysis of the *forum non conveniens* issue is the same in both forums. In the state court action, the court first found that an adequate forum existed in Ontario. Order at 9-10. It then held that "the convenience of the parties and the witnesses would be served by trying the case in Ontario rather than in Alabama[,] and the interests of justice wold be served by trying the case in Ontario." Order at 10. This court would make the same analysis. *See Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283-84 (11th Cir. 2001) (holding that the court would first need to determine if an adequate alternative forum was available, and then balance the private and public interests).

In determining the convenience of the parties and the interests of justice, the state court looked to such factors as the location of "[m]ost of the relevant documents and witnesses, including third party witnesses who cannot be subpoenaed to this court;" the existence of "related lawsuits pending in Ontario;" and that "the conduct of which Chazen complains occurred in Canada and no relevant conduct occurred in Alabama." Order at 9. This court would also look to these factors. *See Leon v. Million Air, Inc.*, 251 F.3d 1305, 1314-15 (11th Cir. 2001) (balancing the private interests such as "ease of access to source of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses," and the public interests that "strongly favored dismissal" to find that dismissal was appropriate); *Satz*, 244 F.3d at 1283-84 (holding that dismissal was appropriate where majority of evidence

and witnesses were outside the country and the public interest favored dismissal because the site

of the incident had a stronger interest in applying its law).

Thus, the *forum non conveniens* issue facing this court is identical to the one addressed by

the Alabama state court.  Chazen's filing of a lawsuit in this court "amounts to no more than a

wish that, in applying the objective criteria to the undisputed facts, a different judge would make

[a different] discretionary *forum non conveniens* determination."  *Pastewka*, 565 F.2d at 854.

The doctrine of collateral estoppel, however, does not allow a party to take two bites at the same

apple.  Chazen chose the initial forum, lost on the issue of *forum non conveniens*, and is now

precluded from relitigating that issue here.  For this reason, plaintiff's complaint is due to be

dismissed.

III.    *Forum Non Conveniens*

Even if collateral estoppel did not bar relitigation of the issue, a separate evaluation by

this court of the *forum non conveniens* issue compels dismissal.  As the Court of Appeals for the

Eleventh Circuit has repeatedly held:

> A party moving to dismiss on the basis of *forum non conveniens* must demonstrate:
> (1) that an adequate alternative forum is available; and (2) that the private and public
> factors weigh in favor of its dismissal.

*Satz*, 244 F.3d at 1282 (citation omitted); *see also Leon*, 251 F.3d at 1311.

The Eleventh Circuit recently discussed in detail the *forum non conveniens* doctrine:

> The doctrine of forum non conveniens "authorizes a trial court to
> decline to exercise its jurisdiction, even though the court has
> venue, where it appears that the convenience of the parties and the
> court, and the interests of justice indicate that the action should be
> tried in another forum." *Sibaja v. Dow Chem. Co.,* 757 F.2d 1215,
> 1218 (11th Cir. 1985). Justice Jackson's articulation of the doctrine
> describes the balancing test as follows:

8

An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have a place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947).

*Ford v. Brown,* 2003 U.S. App. LEXIS 1501 * 11-13 (11th Cir. 2003).

9

The thrust of plaintiff's opposition rests on the Second Circuit's decision in *DiRienzo*. Chazen contends that *DiRienzo* precludes reconsideration of the issue here or at least is compelling precedent to deny Deloitte's motion. See Plaintiff's Mem., p. 10, citing *DiRienzo v. Philip Serv. Corp.* 294 F.3d 21 (2d Cir. 2002). Again, the court finds that plaintiff has overstated the effect of the *DiRienzo* decision and that significant legal and factual distinctions diminish its applicability to this case. That case, though similar, is not "on all fours" as plaintiff again insists. See Plaintiff's Mem. p. 11. Here, of course, the parties in this action and *DiRienzo* are all different but for one - Deloitte Canada. The objective criteria and underlying material facts relied on by the *DiRienzo* court differ from those to be considered here. The *DiRienzo* court did not, and could not, consider the same factors that this court must examine in determining whether this action should proceed in Alabama federal court against Deloitte Canada alone. Instead the Second Circuit premised its decision on the identity of the parties in the *DiRienzo* case – including defendants – who selected the Southern District of New York as their forum, the administrative burden placed on the courts of the Southern District of New York, the fact that the defendants sold stock on the New York Stock Exchange located in that district, and the availability of witnesses and documents in a litigation pending in New York. Significantly, the *DiRienzo* court noted that "willing witnesses can easily travel from Toronto to New York by a direct 90-minute flight." *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 30 (2d Cir. 2002). The Second Circuit also held that the defendants all but conceded that New York was a convenient forum for the federal class action by moving to transfer the underlying cases to the Southern District of New York via an application to the Judicial Panel on Multidistrict Litigation. *Id.* at 29.

10

None of those factors present themselves in this case. No 90-minute flight exists to ferry witnesses and documents between Ontario and Birmingham. The defendant did not request transfer this case to this district. The transaction that underlies this lawsuit involved the sale of a Tennessee company. The only connection to Alabama is the fortuity of Mr. Chazen's residence here. The court concludes that *DiRienzo* does not control the outcome in this case. The analysis of the *forum non conveniens* issue, thus, must continue.

A.   Ontario Is an Adequate Forum.

First, plaintiff does not dispute that Ontario is an adequate forum. "The alternative forum prong of the analysis generally 'will be satisfied when the defendant is amendable to process in the other jurisdiction.'" *Satz*, 244 F.3d at 1282 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 n.22 (1981)); *see also Leon*, 251 F.3d at 1311. As the Supreme Court explained in *Piper*, and the Eleventh Circuit re-emphasized in *Satz*, another forum is inadequate only if "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper*, 454 U.S. at 254; *Satz*, 244 F.3d at 1282.

Deloitte Canada is amenable to process in Ontario. Moreover, the Canadian courts provide an appropriate forum for litigating the subject matter of this dispute. Chazen could assert a variety of claims in Ontario based on the facts alleged in the Complaint. Thus, Ontario provides an adequate alternative forum for litigating this case. *Satz*, 244 F.3d at 1282-83; *Leon*, 251 F.3d at 1311-14[2]

_____

[2]That differences may exist between Canadian and American law "should ordinarily not be given conclusive or even substantial weight" in assessing the adequacy of the alternative forum. *Piper*, 454 U.S. at 247.

11

B.      The Balancing of Factors Weighs in Favor of Dismissal.

Second, both the public and private factors weigh in favor of dismissing this action. *See*

*Leon*, 251 F.3d at 1314-15 (balancing the private interests such as "ease of access to source of

proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining

willing, witnesses" and the public interests that "strongly favored dismissal" to find that

dismissal was appropriate); *Satz*, 244 F.3d at 1283-84 (dismissal was appropriate where majority

of evidence and witnesses were outside the country and the public interest favored dismissal

because the site of incident had a stronger interest in applying its law.

1.      Private Factors

Mr. Chazen emphasizes the deference to be given to his choice of a home forum,

especially when the alternative is a forum in a foreign country.  See Plaintiff's Mem. at 12, citing

*Magnim v. Teledyne Cont'l Mtrs.*, 91 F.3d 1424 (11th Cir. 1996).  The plaintiff's choice is indeed

to be given deference.  However, it is one factor and not determinative.  If it were determinative,

dismissal or transfer based on *forum non conveniens* would be a non-issue.  The court does

acknowledge that this factor tips in favor of nondismissal.

The court must also must note that plaintiff's chosen forum – Alabama – has no ties to

this litigation other than being his home state.  None of the events underlying this case transpired

here.  None of the witnesses – except Mr. Chazen himself – resides here.  As the Eleventh

Circuit has repeatedly explained, "[r]elevant private factors include the relative ease of access to

sources of proof, ability to obtain witness, and 'all other practical problems that make trial of a

case easy, expeditious and inexpensive.'" *Satz*, 251 F.3d at 1283 (citation omitted); *see also*

*Leon*, 244 F.3d at 1314.  Here the acts giving rise to this complaint occurred in Canada, tilting

12

the private factors in favor of dismissal. *See Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 952 (11th Cir. 1997) (affirming district court's dismissal in part because foreign forum, where "more of the allegedly fraudulent acts occurred," was more convenient location).

Access to evidence provides "perhaps the most important 'private interest'" to be balanced. *Ford v. Brown*, 2003 U.S. App. LEXIS 1501 * 14. Access to evidence requires an analysis of "access to proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining witnesses." *Id*. To analyze access to proof, the court must consider the elements of plaintiff's causes of action. "The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Id*. Citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

In this complaint, the plaintiff asserts Alabama state law claims for misrepresentation, suppression, negligence, wantonness, conspiracy to defraud, and securities law violation, plus a claim alleging violation of federal securities law. All of these claims center on Deloitte Canada's conduct in auditing the financial records of Philip. Deloitte Canada audited Philip's financial statements and issued the audit opinions that form the basis for Chazen's claims. Deloitte Canada is a limited liability partnership organized under Ontario law. Deloitte Canada has offices only in Canada. Deloitte Canada conducted the audits out of its Mississauga, Ontario office. None of the audit work at issue in this case was performed in Alabama. As a result, the vast majority of the witnesses and documents relevant to this case are in Canada. All of Deloitte Canada's audit workpapers are there, and Philip's documents pertaining to its securities filings, financial statements, and copper inventory are located there or at least within the reach of the

13

courts in Ontario. Philip was an Ontario corporation with its principal place of business in Hamilton, Ontario. Its corporate accounting function was located in Ontario, and the relevant former officers and employees of Philip are located in Ontario. In essence, this suit rises from actions by the defendant in Canada, and most of the evidence and witnesses are in Canada.

The convenience of the parties and witnesses strongly favors litigation of Chazen's claims in Canada. The vast majority of the witnesses whose testimony would be germane to those claims, including Deloitte Canada's partners and employees and former employees, and Philip's former accounting employees, are located in Canada. The cost for these witnesses to attend trial will be lessened significantly if the case is tried in Ontario.

In addition, nearly all the relevant documentary evidence is located in Ontario or subject to the subpoena power of the Ontario courts. Deloitte Canada's audit workpapers are located in Ontario, as are most of Philip's documents relating to its copper inventory, the preparation of its financial statements, and its securities filings. Unlike many cases, in which the plaintiff's documents may be exceedingly relevant to proving one or more causes of action, in this case principally the books and records of Philip, Deloitte Canada, and other third parties provide the key evidence. *See Koster V. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 526 (1947) ("[O]nly the defendant[s] will be affected by the choice of the place of production of records."). Chazen's documents are likely to be far less voluminous and relevant only to discreet issues, such as reliance. Letters rogatory would be the only means for the parties to compel the production of documents in the possession of Philip and other third parties located in Canada. This method will result, at a minimum, in substantial delays and the need for the parties to retain counsel in Canada.

14

Similarly, crucial third-party witnesses are located in Canada and cannot be compelled to testify at the trial if it were held in this court. Among the most important is Robert Waxman, a former officer and director of Philip and the central figure in the alleged wrongdoing there, who resides in Ontario, but others include former Philip employees Peter McQuillan, the Comptroller of Philip's Metal Recovery Group, and Greg Madesker and Rik Barrese, traders who allegedly engaged in improper and unauthorized copper trading, each of whom resides in Ontario and is beyond the subpoena power of this court. Only the Canadian courts have the ability to compel the testimony of these and other important Canadian witnesses. The unavailability of these witnesses favor dismissal.

The court recognizes that these third party witnesses could presumably be deposed in Canada and their testimony presented via deposition. However, defense counsel estimated that the testimony of approximately two dozen witnesses would need to be presented by deposition. The court acknowledges the disadvantage of presenting testimony even by video deposition and the adverse effect that such a large number of depositions would have on jurors' attention spans. The need for live testimony especially in a fraud case involving so many witnesses who would not be subject to compulsory process here weighs in favor of dismissal.

2.     The Public Factors

In addition to the private interests, the court must also consider public interests. "Relevant public interest factors include the sovereigns' interest in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Satz*, 251 F.3d at 1314 (citation omitted); *Leon*, 244 F.3d at 1283 (citation omitted). In this action, the first two factors favor dismissal, and the last factor is neutral because either jurisdiction may need to apply

15

foreign law.

The plaintiff again relies on *DiRienzo* to argue the interest of the United States in enforcing its securities laws to maintain the integrity of the securities market. See Plaintiff's Mem. at 12 -15. Again, the facts of this case vary greatly from those in *DiRienzo*. First, the plaintiff is <u>not</u> suing Philip, who the Second Circuit described as using "aggressive techniques . . . within the U.S. that targeted U.S. investors." 232 F.3d at 66. If Philip were a party, the court's analysis would be quite different. As plaintiff pointed out, Philip knew it was negotiating the purchase of Southern Foundry with a resident of Alabama. However, Chazen did not sue Philip. Instead, he sued Philip's accounting firm who did not sell stock in the United States securities market and who did not aggressively target the plaintiff. Also, the court notes that unlike the securities fraud claims asserted in *DiRienzo*, plaintiff's federal securities claims are the proverbial tail wagging the dog. The plaintiff's original state case did not even contain his federal securities claim. Plaintiff cannot assert the same public interest found in *DiRienzo* to justify his selection of this forum.[3]

When the action is based on facts occurring in the other jurisdiction, the interest of that sovereign favors dismissal of the action. *Satz*, 244 F.3d at 1283-84; *see also Ford,* 2003 U.S. App. LEXIS 1501 at * 20. *Leon*, 251 F.3d at 1314-15. Canada has a significant interest in adjudicating claims that fraud was committed from within its borders. The underlying circumstances of this dispute involve the conduct in Canada of a Canadian corporation, and its directors, officers, and auditors, most of whom were Canadian. *See Leon*, 251 F.3d at 1315

---

[3]Chazen cannot claim that Alabama has a strong interest in applying its laws under these circumstances, because the Alabama state courts have already held that this interest is insufficient to warrant maintaining this action in Alabama.

(finding that public interest weighed in favor of dismissal because the foreign courts already had

cases regarding the tort, and the foreign state had an interest in determining the extent of

damages for a tort committed within its borders).

Finally, judicial efficiency will be furthered by litigating this dispute in Ontario, where

several actions are already pending against Deloitte Canada arising out of the same alleged

accounting improprieties as those alleged here.[4]

Having weighed all these factors, the only factor supporting plaintiff's choice of forum is

the deference due that choice.  While recognizing that choice to be an important consideration,

the court concludes that all other factors weigh heavily against plaintiff's choice.  The weighing

of the public and private interest factors support only one conclusion: this case should not be

litigated in Alabama.

The court also notes that plaintiff made a calculated decision not to join in other litigation

to pursue his interest.  He also refused to refile his action in an appropriate forum after dismissal

by the state court.  He gambled when he chose to file his second case in this forum.  He had a

second chance to file in an appropriate forum, but refused to do so.  He took a chance when he

refiled this case in federal court in Alabama.  As all gamblers, he should not be heard to

---

[4]One factor that can also be considered in determining the interest of justice concerns the
condition of the court's docket.  Although neither party submitted any information about the
status of the Ontario court's docket, this court is intimately aware of the overcrowding of the
docket in the Northern District of Alabama.  A recent report by the Administrative Office of
Courts reflected weighted case filings of 648 cases per judge in this district.  U. S. District Court
– Judicial Caseload Profile, 9/30/2002.  Having no information about the condition of the
Ontario docket, the court does not consider this factor in its decision.

complain that this gamble did not pay off.[5]

III.     Statute of Limitations

Although the court has concluded that this case should be dismissed based on collateral estoppel and *forum non conveniens*, a third alternative reason mandates dismissal: plaintiff's claims are time barred.

All of Chazen's claims arise from events occurring by 1997, which he discovered, at the very latest, in 1998.  Thus, all of his claims are barred by the applicable statutes of limitations. Indeed, Chazen admits that he "learned of the facts giving rise to the claims asserted herein on or about January 27, 1998."  Compl. ¶ 17.  He did not file this Complaint until February 8, 2002, more than four years later.  Chazen alleges that his claims are tolled by actions that were previously filed by him and other parties.  This court finds his attempt unpersuasive.

Unless Chazen's claims are tolled by the earlier actions, each of those claims are time-barred.  Alabama law provides a two-year statute of limitations for the state claims.  *See* Ala. Code § 6-2-38(l); *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So. 2d 454, 458-60 (Ala. 1993) (granting summary judgment based on two-year statute of limitations for fraud and suppression); Ala. Code § 8-6-19 (providing two-year statute of limitations for state securities claims).  Chazen

_____

[5]At the hearing on this matter, counsel for plaintiff for the first time suggested that the court should transfer this case to the Southern District of New York, where the class action and Chazen Tennessee action are now pending.  The court refuses to transfer this case.  The plaintiff could have joined with the other sellers of Southern Foundry when they originally sued Deloitte and other defendants in Tennessee, but he refused.  He could have joined that action after it was transferred to New York, but he refused.  He could have joined that action after his Alabama state court lawsuit was dismissed, or when the Alabama Supreme Court affirmed that dismissal but he chose not to do so.  Plaintiff rejected the decision by the Alabama state court and refused to refile his action in a proper forum.  Having refused to properly litigate, the plaintiff should not now complain that this court refuses to give him yet another chance to litigate his claims in a proper forum.

concedes that his claims accrued, at the very latest, by January 27, 1998, when he alleges that he

knew of "the facts giving rise to the claims asserted." Compl. ¶ 17. *See Kelly*, 628 So. 2d at 460

(fraud claims accrue when the plaintiff "discovers or should have discovered the fraud"); Ala.

Code § 6-2-3 (fraud claim).[6]  Because plaintiff did not file this action until February 2002, absent

tolling of the statute of limitations, the state law claims are all barred.

The federal securities law claim is governed by a one-year statute of limitations that

begins when the plaintiff discovers the facts forming the basis of the claim.  That limitations

period also has long since expired. *See, e.g., Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th

Cir. 2001) ("Claims under Section 10(b) of the Exchange Act and Rule 10b-5 must be brought

'within one year after the discovery of the facts constituting the violation.'") (quoting *Lampf,*

*Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364 (1991)).

In his opposition, Chazen effectively concedes that, absent waiver of the statute of

limitations defense or tolling of the limitations period, his claims cannot survive a motion to

dismiss. *See* Plaintiff's Mem. at 17.  With little analysis, however, Chazen contends that (1) the

state court's order of dismissal required Deloitte Canada to waive the statute of limitations

defense in this action and (2) the filing of previous class actions tolled Chazen's limitations

period. *Id*. at 18.  Both arguments are meritless.

First, the state court's order of dismissal does not require Deloitte Canada to waive its

statute of limitations defense in this case.  That order of dismissal was specifically premised on

---

[6]In fact, negligence and wantonness causes of action are not subject to any "discovery rule," and
such claims accrue, at the latest, when the plaintiff suffers injury. *Williams v. Norwest Fin. Ala.,*
*Inc.*, 723 So. 2d 97, 104 (Ala. Ct. Civ. App. 1998). Here, Chazen suffered injury, if at all, in
October `1997, when the sale of Southern Foundry occurred and Chazen received Philip stock
that was allegedly artificially inflated in value. Compl. ¶ 3.

19

Chazen bringing a lawsuit in Ontario, not another lawsuit in Alabama (even if in a separate

court). The state court dismissal contained the following provision: "This dismissal is

conditional upon the defendants' consent to jurisdiction of the Ontario Court and upon the

waiver of any statute of limitations defense that may have arisen since this action was

commenced on December 30, 1999." Order at 10. Immediately prior to this condition, the court

explained: "the undisputed facts make clear that this case is due to be dismissed without

prejudice so that it can be pursued in the Canadian courts. However, as a condition of the

dismissal, the defendants must waive any defenses based upon the lack of jurisdiction of the

Ontario court. As a further condition, each defendant must also consent to the tolling of any

applicable statute of limitation for the period that this action has been pending." Order at 9.

The clear intent of this order was to preclude the defendant from asserting the statue of

limitations defense, as well as any jurisdictional issue, if the plaintiff filed suit in Ontario. The

basis of the court's decision was that Ontario was the more appropriate forum as asserted by the

defendant. The court understandably did not want to allow the defendant to assert the Statue of

Limitations to bar the action in the preferred jurisdiction. The plaintiff, however, cannot take

that waiver out of context and argue that defendant must be bound by the language of the order

when plaintiff refused to be bound.

The plaintiff also argues that the filing of class actions now embodied in *DiRienzo* toll the

running of the statue of limitations as to his claims. The basic proposition of law does provide

that "the pendency of a class action tolls the applicable statute of limitations . . . until the district

court makes a class certification decision." *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374,

1391 (11th Cir. 1998); *see also, American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-54

(1974). However, the Eleventh Circuit has not addressed the precise issue raised here: whether

the statute of limitations is tolled when class certification has not been denied and the plaintiff

filed his own action asserting individual claims.

The Supreme Court explained the basis for this equitable tolling doctrine in *American*

*Pipe*. The Supreme Court held that the filing of a class action tolled the statute of limitations for

all purported class members who sought to intervene after the denial of class certification.  414

U.S. at 552-54.  The Court explained that a contrary rule would deprive Rule 23 actions of the

"efficiency and economy of litigation" for which they were established, because purported class

members would have to file motions to intervene or join in the action to protect their rights if the

class were not certified.  414 U.S. at 553-54.

Conflict does exist among the courts that have considered just how far the tolling doctrine

of *American Pipe* should extend.  *See e.g., Rahr v. Grant Thornton LLP*, 142 F. Supp. 2d 793,

800 (N.D. Tex. 2000) ("None of the judicial efficiency purposes of the doctrine is served by

applying it to plaintiffs who voluntarily pursue their individual claims even before the court

determines whether the class is viable."); *Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 335

(D. Md. 2000) ("[T]he rule [established in *American Pipe*] does not apply to 'protect the

individual plaintiff who files an independent action after the statute of limitations has expired but

before a certification decision has been rendered in a timely class complaint which supposedly

includes the plaintiff.") (citations omitted); *In re Brand Name Prescription Drugs Antitrust*

*Litig.*, No. 94 C 897, 1998 WL 474146, at *8 (N.D. Ill. Aug. 6, 1998) ("[I]t would be inequitable

to now allow the Individual Plaintiffs to reap the benefits of a doctrine which is designed for a

group – the Class and its putative members – which they disavowed being a part of from the

21

beginning.  In fact, class action tolling has been denied in such situations where a plaintiff 'wants his cake and to eat it, too.'") (citations omitted); *cf. Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1389 (11th Cir. 1998) (*American Pipe* doctrine tolls the statute of limitations for class members until class certification is denied, not until appeals are finished, to further the goals of efficiency and economy); *but see Realmonte v. Reeves*, 169 F.3d 1280, 1283-84 (10th Cir. 1999) (holding that *American Pipe* doctrine does not require denial of certification, and that plaintiffs who opted out of class were allowed benefits of tolling); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) (same).

Courts in this circuit have not addressed this issue.  *See Wood v. Combustion Eng'g, Inc.*, 643 F.2d 339, 346-47 (5th Cir. April 1981) ("It must be said that there appears to be a very real controversy as to whether *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 176 n. 13 (1974), extends *American Pipe* to situations in which a class member opts out and files separate suit. While this question is an interesting one, and one which this court has apparently never squarely faced, we decline to pass on the question at this time.").

The more persuasive reasoning rests in those cases that have refused to extend the equitable tolling doctrine to cases in which the plaintiff consciously chooses not to participate in the class action.  Those decisions support the rationale enunciated in *American Pipe*, as well as the general law regarding equitable tolling in this circuit.  *See, e.g., Wood*, 643 F.2d at 346-47 (equitable tolling does not apply when plaintiffs waited 19 months to re-file after opting out of class actions); *Jefferson v. H. K. Porter Co.*, 648 F.2d 337, 339 (5th Cir. June 1981) (Plaintiffs "failed to allege any circumstances other than the pendency of the [class action] litigation to justify equitable tolling of the one year statute of limitations period.").

22

For example, as one court explained:

> Here, these fundamental cornerstones [of *American Pipe*] –
> reliance and efficiency – are lacking. . . . By filing his own lawsuit,
> plaintiff affirmatively demonstrated his choice not to rely on the
> class action mechanism. . . . In addition, by filing this action and
> not relying on the [] class, plaintiff created the very inefficiency
> that *American Pipe* sought to prevent – he generated more
> litigation and expense concerning the same issues that were
> litigated by a class of which he was a member.  Accordingly,
> plaintiff is not entitled to the benefit of a toll under *American Pipe*.

*Wahad v. City of New York*, No. 75 Civ. 6203, 1999 WL 608772, at *6 (S.D.N.Y. Aug. 12, 1999), 1999

LEXIS 12323, at * 19-20 U.S. Dist. (S.D.N.Y. Aug. 12, 1999).

The court, therefore, concludes that the equitable tolling doctrine does not apply to this case

because the plaintiff disavowed the class action by filing his own suit.  Without the benefit of tolling, the

statutes of limitation long since expired and plaintiff's claims are thus time barred.

Because these three alternative grounds provide ample justification for dismissal of plaintiff's

complaint, the court need not address defendant's remaining arguments.

This case will be dismissed with prejudice[7] by separate order.

DONE and ORDERED this 28th day of February, 2003.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

---

[7] Collateral estoppel and statues of limitation – both of which apply here – exist because of the idea that a
party cannot repeatedly litigate the same issue for an unlimited amount of time.  In other words, all
disputes must come to an end.  The plaintiff has had repeated opportunities to file his case in an
appropriate forum or to join the actions pending in New York.  He cannot repeatedly seek to litigate "his
way."  Therefore, dismissal with prejudice is appropriate in this case.

23